251626 Guryeva-Motlokhov v. Brown, et al. Mr. Costello. Good morning, Your Honors, and may it please the Court. David Costello for Appellant Yulia Guryeva. Section 1782 required Ms. Guryeva to show that she will have a practical ability to use the requested discovery in a foreign proceeding. There are many reasons why Ms. Guryeva has carried that burden here, but we think the simplest one is that there is an objective basis to conclude that at least one of the parties in the Antiguan proceeding will appeal an adverse judgment. Then, once the other parties in the Antiguan proceeding have appealed an adverse judgment,  So why is that enough? I'm sorry to interrupt you, but I think you'll entertain some questions earlier. Why isn't that enough? In other words, there is no current pending proceeding, correct? Why isn't that enough to support Judge Froman's decision here? Sure. So I think there are two arguments on the Antiguan side of the case. I'm talking about the Antiguan side. Sure. So on that side of the case, I do think there are two arguments. I think we have our argument that there is only one proceeding going right now because it covers all stages of the case through appeal of right. Now, I think that Court would require this Court or, excuse me, that argument would require this Court to define the term proceeding. And I think there's an easier way to resolve the case. And that's to stop my friend for the moment that the appeal is a separate proceeding. It hasn't happened yet. And then what I have to show you is that under Intel, that proceeding is reasonably contemplated. And I think that the key barrier for me is that I have to convince you that there is an objective basis to think that there will be an appeal in Antigua. And that you can introduce evidence at that stage, right? Because that's one thing. Here, we don't normally take new evidence. If you came up to us on appeal and said, hang on, we got a bunch of evidence in foreign discovery, we'd probably say good luck with that. Yeah. I agree, Your Honor. It is a little strange. I have learned that that is the practice in many foreign courts. I mean, it was the practice in the French court in Bonfins. And here we have an unrebutted declaration saying that that also is the practice in Antigua. And I don't think my friends dispute that. So that issue I don't think is a big part of the case. The core issue we see is that we have to show you that there's an objective basis to think there will be an appeal. But didn't Judge Furman deny this without prejudice, right? That's correct, Your Honor. So if there's an appeal, we'll know what's appealed. We'll know what the issues are. We'll know what the content of the – we'll know what the contours of the appeal are. And you can ask for the documents then. What's wrong with that? Well, I think there is a problem with that, Your Honor. You know, the reasonable contemplation test from Intel contemplates that you may need and will often need discovery before the stage of the foreign case where you want to use it. And the reason why – I'm sorry. Say that again. Sure. So Intel holds that you don't have to wait until the stage of the case in the foreign proceeding to seek the 1782 discovery. You can move before that stage happens so long as the proceeding for this argument is reasonably contemplated. So why did – so there may have been alternative paths to address these issues, but why is Judge Furman's decision to let you request the documents at a later stage in the proceeding an abuse of discretion? Well, I don't think that it's the – I don't think you're applying the abuse of discretion standard here, Your Honor. The question on appeal right now is whether Judge Furman made an error of law in applying the four-use statutory prerequisite. Abuse of discretion would apply to the Intel factor stage, which we are not at yet. We are at the statutory prerequisite stage. That's a question of law. And the question just becomes whether we can use this evidence in a reasonably contemplated proceeding at this point of the argument. Why wasn't Judge Furman's decision just a practical, common-sense assistance to both parties? You will know what documents you need. They will know what documents you have requested that are arguably or actually irrelevant. Right. I understand the concern, Your Honor. I think the main point in teaching from Intel is that discovery – If I can explain. So the reason is that discovery can be quite slow in the United States, and Intel acknowledges that and says you can seek the discovery before the foreign stage of the case. But you don't know what to discover. You don't know who the relevant parties are going to be. You don't know what the issues are going to be. You don't know what the potential errors below are because there's been no determination below. Right, Your Honor. So I do think that I need to convince you that we have an objective basis here today on this record to conclude that in the foreign proceeding there will be a judgment that passes on the corruption issue and then we can take that issue up on appeal. I think this record does establish that fact because – Do you think this – you're in a court that you're telling us is going to litigate your claims of criminal misbehavior against foreign sovereigns and foreign officials? That is exactly the issue right now in Antigua, Your Honor. And we have an unrebutted declaration. I think this is so important. We have an unrebutted declaration. My friends did not put any declarations into the record that says that this is a core issue in the Antiguan case. And, look, I understand the concern about – What's going to be the resolution of what's – how's the judgment in the Antiguan case going to read? What's going to set it? Sure. So we think we're going to win in the Antiguan case. But no matter who wins, we think that the judgment is going to pass on the corruption issue. Here's the problem, Mr. Costello, and I think it's a practical problem that maybe you can help me with and maybe this is how – why you started with what does the proceeding mean. The trial court – at the trial court level, the proceeding, I think, is done, but you can correct me if I'm wrong. And what you – your client is asking for is an opportunity to obtain discovery under the statute in connection with a possible appeal. Correct? And something you said triggers this question, which is that you don't know if you've won or lost at the trial court yet. There is no judgment. Is that correct? That's correct, Your Honor. Okay. So if you win, then what? If we win – Then what? I think that my friend, the Antiguan government, will appeal the adverse judgment because this is a highly contested case and I think it's – So you think – so this is based on a belief that there will be an appeal by your opponent, and then as a result of that series of conditions, you are entitled to discovery under the statute. Is that the logic? I think that's the logic of one of our Antiguan arguments. But I think that logic is quite founded in Intel. I mean, the reasonable contemplation standard says that I have to explain to you, in this case, two facts. I have to show that there's an objective basis, which means a non-speculative basis, to conclude on this record that, one, one of the parties in Antigua will appeal, and, two, the trial court will pass judgment on the corruption issue such that it's relevant on appeal. I don't think that that's a hard burden here because this is a hotly contested case. It's a high-profile – Why have you been denied the opportunity to get? Well, here, Your Honor, we're seeking financial records among the parties who we believe have been engaged in corruption in Antigua. That's what we have been preventing. But you'll have the opportunity to get them when you know what you need against whom. I mean, your theory is kind of disintegrating as far as I can see. Well, Your Honor, if I could say one point about that, and then if I may, I'd like to touch on the UAE issue. So one point about that, I think that that Rubicon that you're talking about has already been crossed in Intel. I think what you are expressing hesitancy about is the idea that you can seek discovery before you. You've asked for documents of personal financial information from a long list of people for many years. The prospects of a court narrowing this, your request, based on my experience goes way back to the trial court, is virtually certain. You're not going to get all these documents. So you don't know – you're not only not going to get them, you don't know what you need. So about the overbreadth part of this. Is it correct that you do not know at this point what you need since you haven't seen the judgment? Your Honor, I don't think that's correct. I think that we know on this record there's an objective basis to conclude that one side or the other will appeal the judgment and that the judgment will pass on the corruption issue. So I know what I need on appeal is evidence showing – You know what you want, but you don't know what you need. Again, Your Honor, I – That's disingenuous. Your Honor, with respect, all we are arguing here is that there is an objective basis to conclude that those two events that I explained are going to happen, and that's all you need under Intel and under Bonson's. But if I may, I don't want to spend all my time – Just turn to the UAE proceedings. Of course, Your Honor. So I think that the UAE proceeding is another way to reverse here. The basic theory is that Section 1782 says that foreign proceedings include criminal investigations before formal accusation. And so the question for this Court is twofold. First, can we use the requested discovery in the UAE criminal investigation? And second, is that criminal investigation reasonably contemplated here? And I think the answer to both questions is yes. So on the use part of it, we can use the requested financial records here in two ways in the UAE investigation. We can use it to draft and file and lodge the complaint in the UAE investigation, which is the initial stage of that investigation, and Mies teaches that the complaint is just the first part of a proceeding. So that's one way we can use this discovery. At the time of Judge Furman's decision, when that was entered, had there been a decision to initiate proceedings in the UAE? No, Your Honor. There had not. But again, the reasonable contemplation standard assumes that there has not been the initiation of proceedings. Intel acknowledges – So there was a possibility, I think expressed in the record, that she might not initiate proceedings, but nevertheless was asking for a federal court of the United States to engage the machinery of 1782 to provide her with access to discovery that she otherwise would not have. That's the issue. So can you address that concern? Sure. The question, I think, is expressing or conveying. Yeah, I understand, Your Honor. So that's the reasonable contemplation part of this analysis. So two points. One, I don't think the record says that Ms. Gurrieva may not pursue this case. I think that the record says that when we have sufficient evidence, we will be pursuing this case. Well, she'll make the determination based on the evidence. So there's a difference between sort of like bringing – you can bring a civil complaint on information and belief and then get information and discovery. Here, she hasn't even lodged the criminal complaint. Sure. Yeah, I understand, Your Honor. First, I don't think it matters if she hasn't lodged the criminal complaint yet. The In Re Burn case that we cite in our – But it's because she can't lodge it until and unless the discovery she now seeks comes back the way she hopes it will. Well – It's all – it's not just contingent. It's circular, right? It's the – the filing of the complaint in the reasonably contemplated UAE criminal proceeding is contingent on getting the discovery that you want to get because you're reasonably contemplating it. Yeah. I understand the question, Your Honor. So I think that the premise of that question rests on a misconception, and it's the misconception that you have to have all of the evidence you need already. Just enough to initiate is all I'm saying. Not all of it. But even then, like, I think that you don't need that under the reasonable contemplation standard. And if I can explain why. I mean, certain funds teaches that the standard for reasonable contemplation is whether we have provided objective indicia showing that Ms. Gurrieva is serious about pursuing this proceeding. That's the standard. And Consortio, which is an Eleventh Circuit case we cite in our brief and is cited in certain funds, squarely – So that sounds like a subjective test. Well, no, no. It's an objective test. It's an objective – it's an objective test. The way you framed it sounds like a subjective test where we're trying to figure out if she's serious. I don't care if she's serious. What is it on the record? I mean, I shouldn't say it quite that way, but you understand. What is it on the record besides some expression of her subjective intent that we can look at to satisfy ourselves? Because reasonable contemplation is not just, you know, anything. This is actually quite serious. What is it on the record that can satisfy us that this is reasonably contemplated, this proceeding in the UAE as a proceeding is reasonably contemplated, and that the other intel factors are? Of course, Your Honor. So I think you turn to the Manguris factors, and I think we meet the Manguris factors. One of the first Manguris factors is whether we have laid out a concrete legal theory that we intend to pursue in the UAE. We've done that here. We've laid out the legal theory in the UAE declaration that says we are going to be seeking or pursuing claims of theft and embezzlement of funds from the sale of the Alfa Nero. Another Manguris factor is whether we have supported that allegation with baseline facts. In the record, you have a declaration from our investigator that has shown all the legwork we have done to establish that the Antiguan officials have engaged in corruption and crimes prosecutable in the UAE. And then the third Manguris factor is whether we have said that we have an intent to pursue this proceeding. And here we have. We have said we intend to file this complaint as soon as we have sufficient evidence. And really, that is no different from In Re Burn. In In Re Burn, the litigant said, I will file when I have sufficient evidence. It was the exact words used in that case. And the Court said it was in reasonable contemplation that he would be pursuing that proceeding, because other indicia in the record showed that he was serious about those claims, particularly one of them being that he had already filed another claim and another proceeding related to that nucleus of operative fact. And we have done that here. I mean, here we have a proceeding in Antigua, a proceeding in Russia. We have two 1782 petitions in the States. All of that shows that Ms. Grieva is quite serious about pursuing this claim. That means it's reasonably contemplated. And then I think that all agree here that we can use this discovery in that stage of the case. Thank you.  Counsel. Good morning, Your Honors. And may it please the Court, Stephen Schneebaum on behalf of the Prime Minister of Antigua and Barbuda, Gaston Brown, and other targets of the putative discovery ordered under originally by Judge Furman. With me at counsel table are my colleagues Hannah Sweeney, Nicholas Rensler, and Ishita Helker. If it please the Court, let me begin with the point that seemed to be the essence of Mr. Costello's argument. That in Antigua, all that needs to be shown is that there is an objective likelihood that there will be an appeal. We asked the question, what appeal? What will the appeal be like? What will be the issues on appeal? Well, it will be some subset of the issues in the trial court. There would be the issues, at least some of the issues in the trial court. Right, some subset. But we don't know which ones. We don't know, for example, whether the case might be dismissed at the trial court level for lack of standing on the grounds that Ms. Gruyeva does not own the Elfenero, never did, and therefore her argument that she lost a property interest is at least on its face questionable. The case could be disposed of at that point. That wasn't addressed before the trial? It was addressed before the trial court, Your Honors. Okay. No, before the actual trial. We understand that it was raised in the trial court. At what particular phase, the record doesn't reflect. But in any event, as the Court is well aware, a jurisdictional question of standing can be raised by the Court itself. But Ms. Motlykoff's counsel has indicated that pretty much whatever happens, they expect to appeal. And if your client, given his position and given the kinds of allegations made here, were to lose in any way, it seems at least reasonable to contemplate that he might appeal? Well, is there more – why is there more than that needed under the standard of the litigation being reasonably contemplated? For this reason, Your Honor, because the – although it is likely that the defendants should they lose in the trial court, and that does not include the Prime Minister, incidentally, but the government were to lose. Because, remember, the issue in the trial court is the constitutionality of the statute by which the ship was seized. Nothing about what happened after that is relevant. The constitutionality of the seizure is what is at issue in the trial court, where Ms. Guryeva claimed. And that is also the only issue that would be on appeal? Is that correct? We don't know what the issues will be on appeal because we don't have a decision yet. No, no, I understand that. But if the core issue is the constitutional issue. The core issue in the trial court, yes, in Antigua, is the constitutional issue. That's correct. So I'm a little confused when you say that we don't know what would be on appeal because if it's the – is it a facial challenge or the equivalent of a facial challenge here to the constitutional provision? My understanding is that it is a facial challenge, that the claim that Ms. Guryeva is raising in Antigua is that the statute that authorized the seizure of a vessel that had been in the harbor at Falmouth for a long period of time and had not been moved, that that seizure was in effect a Fifth Amendment violation from a United States perspective. Well, but I think the claims appear to be that the adoption of that law after the was not validly done and from their perspective infected by some form of corruption. That seems to be underlying all of this – all of these allegations. And that's what – your friend on the other side has represented that the question of whether there was some corruption is very much at issue in the Antiguan case. And that is far from obvious, Your Honor. In fact, we would suggest that what is at issue in the Antiguan case is the statute, regardless of what happened after the vessel was seized. Well, I'm actually talking about before the statute – the way in which and the purpose for which the statute was enacted, which is, I think, what they're challenging. Well, the purpose of the statute is difficult to discern without looking at the statute itself. Right. So there's a lot of interesting issues in the trial court itself. Indeed. And we don't know which – if any of those will be raised. As I said, it is at least possible that the trial court will dispose of this case for lack of standard. So then it's at least possible that it doesn't. It's also possible that it doesn't. And what does reasonable contemplation mean as compared to at least possible? The reasonable contemplation we suggest must be reasonable contemplation in which this evidence can be used. And there is no such reasonable contemplation because we simply don't know. To pick up what Judge Parker was asking my friend about, if they wait and see what this decision is and see what the nature of the appeal is, we'll be in an entirely different posture. And then we'll spend 18 months or 36 months going through the quashing process and the appeal of the quashing decision. It's possible. It's possible. It's reasonably contemplatable, I think, actually. But even if that's the case, Your Honor, that means that the procedure in Antigua will be ongoing. They claim that they can introduce this material at the next phase. Of course, they also concede their lawyer, her lawyer, who issued a statement, not an expert witness, but her lawyer, admitted that they need leave of court to introduce this evidence. And so there will be presumably in Antigua. We need leave of court to introduce all evidence. To introduce the new evidence. But evidence generally, right? You ask the trial judge or whoever, I move to admit this. So I'm not sure that that makes a big difference here. No, I'm talking about introducing new evidence at the appellate stage. Right. To do that requires an order of the court. So yet another roadblock potentially. That's the equivalent of our rule that requires a motion to add something to the appellate record. Absolutely right, Your Honor. That's correct. And so all of those hypotheses, all of those speculations, all of those suppositions militate against the idea that any particular appeal is reasonably contemplated. Correct me if I'm wrong, but they're looking for financial information from a list of government officials. What they're trying to do is look at the clearinghouse records to see what wire transfers were made, what checks were cashed and so forth, which would include all kinds of personal information that may not be relevant at all. He would, if he got a subpoena, be looking at how much one of these people paid for their son's college tuition. How much did the wedding cost? How much did the vacation cost? Exactly right. And on and on and on without any kind of meaningful supervision. And more than that. You're absolutely right, Your Honor. But more than that, this goes back five-and-a-half years before the sale of the Alfamira. It goes back to ancient history. Yes. But, counsel, doesn't our fairly recent case law, which I'm familiar with, say that at the first stage we consider the question of the statute and whether we authorize the issuance of the subpoena, but then all of the ordinary protections of Rule 26, including overbreadth, relevance, undue burden, come into play. And that's what you can use a motion to quash for within the normal confines of our discovery rules and limitations. So questions of overbreadth and burden and irrelevance, those don't go to the question of whether 1782 authorizes the subpoena, do they? Well, we submit that, again, relevance is a relevant, as it were, criterion. And as Judge Berman indicated. But not the scope of the subpoena. Well, the scope of the subpoena demonstrates we submit two things. One, it demonstrates that this request is not limited to anything potentially relevant. It also demonstrates, as does much else in this record, that the use of 1782 here is inappropriate. Why do you say that? I say that for the reason that this, from the outset, this case was labeled as something very different from an effort to obtain information for Ms. Yulia Yuryeva to use in Antigua or in the UAE. And this Court wrote in the Brandy Dorn decision, And did Judge Berman make a finding to that effect? I'm sorry, go on. Did Judge Berman make such a finding? He did not refer to that. It was before him that the original application was filed without reference to Yulia Yuryeva, without reference to the Alfa Nero, who with a caption that read, Corruption investigation of Gaston Brown. Corruption of Gaston Brown is not before the Court in Antigua. What is before the Court in Antigua is the constitutionality of the statute. So this is a distinctly red herring, and it illustrates we submit the motivation of the application in the first place. Let me ask you a hypothetical then. If the issue on appeal in Antigua extended beyond the constitutionality of the relevant statute and involved or included issues relating to these corruption charges that have been leveled, whether formally or informally, would that make a difference to our analysis? It could, Your Honor. Why is that? It could because there would at least be some element of relevance. But it doesn't involve those issues. It involves constitutionality of the statute.  When we talk about relevance, and I heard what you said, that it is a reasonable contemplation of the use, the ability to use the discovery in the relevant foreign proceeding. I can see a scenario where, and maybe you cannot, but I can see a scenario where the fact of the corruption might be relevant to the analysis, the fact or the allegation of corruption might be relevant to the analysis of the constitutionality if the allegation is that the statute, but I'm not aware of this, or the constitutional provision was itself a product of corruption. I don't know how one would establish that a legislative act is the product of corruption, and perhaps the — That's not the allegation, Your Honor. It doesn't appear to be. Again, the constitutionality of the statute, as I would suspect in the United States, will be determined by examining the statute, not by examining what may have happened outside. And when you say — when you — in answer to Judge Merriam's question, I believe, you said, well, it's not relevant. Why isn't that the second step? So that's not — how does relevance attach to the intel factors? Relevance attaches because under this Court's binding precedent, it is the applicant's burden to show that there is an objectively determinable mechanism by which the material will be used to someone's advantage, to the applicant's advantage. And that they have not done. They have not shown that this could be relevant — that any of this material could be relevant, even in the hypothetical case that Your Honor suggested, which is not the case, as we understand it. And that, in your view, is part of the analysis in connection with the intel factors? It is because — it is part of the analysis — Did we get to the intel factors? Did Judge Berman get to the intel factors, or did he stop there? No, he did — he did not get to the intel factors because he determined, as he was certainly entitled to do and as this Court has recognized before, that the statutory standards for 1782 were not met. As the Court is well aware, the process is the statutory requirements have to be met first, and if they are, then we proceed to evaluate the discretionary — The reason I'm asking about the intel factors is because I think Mr. Costello was raising those factors in part in his argument. Well, I think — I don't understand that. If I understood Mr. Costello's argument correctly, I think he was simply alluding to what the Supreme Court said in intel without necessarily referring to the four factors that the Court went on to elaborate. But be that either way, the point is, and we come back to this, that the — that Ms. Kuryeva has not shown that there is a reasonable — a reasonably contemplated mechanism by which this material can be used in an appeal when no appeal has been filed, when we don't know what an appeal would look like, we don't know what issues it raises, we don't know who the parties would be, we don't know any of those factors, and their attempt to get around that problem by saying, well, any eventual appeal is the same as — is part of the same proceeding as the trial court trial is, we submit, plainly incorrect. And you have no idea when the judgment is coming down, I take it? We don't have any idea. It has been a while. We understand, and this is not in the record, but we understand that there has recently been some motions practiced in that court initiated by Ms. Kuryeva. We could submit that to the Court if you so wish. But I don't know and I can't represent that that is the reason for the delay. We simply don't know. Thank you very much. Thank you. So if I may take a couple of minutes to answer — No, I did give Mr. Costello a minute for UAE. Yes, to talk about the UAE. The problem here is very similar to the problem with respect to Antigua. There is no question, and we do not argue, about whether 1782 covers criminal investigations. It plainly does. It says so in Hake Verba. And so the issue is not that. The issue is, is there a criminal investigation? And the answer to that is no, as was made clear in the questioning from the panel of Mr. Costello just a few moments ago. No investigation has been initiated. No complaint has been made to the public prosecutor. The whole purpose, according to their briefs and according to what Mr. Costello just told this Court, the whole purpose is to develop information in order to determine whether a criminal complaint should be lodged. And I'll go further. It is in order to determine whether a crime was committed at all and by whom and against whom. And there are certainly reasons why the discretionary step that needs yet to be taken in the United Arab Emirates, which is the public prosecutor deciding to initiate an investigation, that hasn't happened yet. And that discretionary step may well trip up this effort to pursue Prime Minister Brown in the UAE as they are pursuing him in Antigua. Thank you very much. We'll hear from both. Thank you, Your Honors. Thank you, Your Honors. There's a lot there, so I'll try to be brief. Before you do that, let's say just hypothetically that you, instead of asking for four years, you ask for 10 years. Instead of asking for information from six people, you ask information from 20 people. Under your theory as to how these proceedings work, at what point does Judge Furman get to vet the reasonableness of your request? Sure, Your Honor. As Judge Merriam said, that gets caught in the intel discretionary factors, not during the statutory prerequisite analysis. At what practical point in the proceeding, as you envision it, would these issues get vetted? Sure. So if we win here, you would reverse and remand the case for Judge Furman to consider the intel factors and whether we have satisfied those factors. This would get caught in intel factor four, which requires the court to consider whether the discovery is unduly burdensome and intrusive. So that's where we would do it. Now, if I can just address the— Judge Furman seems to me has—he's, in a practical way, has resolved this problem that will take a lot less wear and tear and expense on the parties and on him. Because you can ask for anything you want once you know what the contours of the appeal will be. How are you prejudiced by that? Your Honor, I think we are prejudiced for much the reason that Judge Merriam— Well, you don't give me your view. Sure. So I share the view. And the view is that the discovery here, we need it ahead of time because discovery in U.S. courts takes quite a while. In the Southern District of Florida case alone that we filed to get discovery here, it took nine months just to get the discovery started. In this record, you have at page 459 of the record, I believe, a statement from the banks here that said that it would at least take half a year to get to respond to these subpoenas. So it takes quite a while in U.S. courts. There's motion to quash— That's because you've asked for tons and tons of material, much of which prima facie seems—you know, I don't know the contours. You know this much better than I do. But, you know, prima facie seems questionable. So the time issue is one of your making. Your Honor, I think that Judge Furman has already said we make a strong case on the intel factors, and this is a consideration for intel. We're here on the statutory prerequisites. May I ask you about the statutory prerequisites? And just to go back to the four-use reason for contemplation issue, you heard Mr. Schneebaum talk about the nature of the appellate proceeding potentially, I guess. I guess you think that it's necessarily going to happen. But the nature of the possible appellate proceeding is focused on the constitutionality of the statute. If that's true, if that's true for now, how could the material, the discovery that you're requesting, be for use in that proceeding? Absolutely, Your Honor. And is it a facial challenge? Is that what it is? Is it a facial challenge? I think it's as applied. I don't know if facial and as applied works the same way over there. But here's what I can tell you. If you look to page 328 and 329 of the record, we explain very clearly what our claim is in Antigua. And the core claim is that the taking and the statute that created the taking was unconstitutional because it was not adequately tailored to advance a legitimate government purpose. And our contention is that the true purpose was to — was corruption, in short. And that is a fact question. In fact, it's no different, Your Honors, than the — No, no, no, no, no. How can you challenge the Constitution? So are you saying that the constitutional provision itself that you're challenging was the — was procured through corruption? I think that we're making two claims. We're making the statute — the argument that the statute is unconstitutional  But when you say statute, is it a constitutional provision or is it a statute? We're talking about the statute, the Port Authority Amendment Act that was enacted pursuant to the Constitution. Okay. And you're saying that that's unconstitutional under some relevant provision of the Antiguan Constitution? Correct. You're challenging, as I understand it, the constitutionality of that statute under a provision of the Constitution, right? Yes. Okay. Yes. So, Your Honor, that's no different from Arlington Heights. Arlington Heights explains that you can invalidate a statute because it was passed with an improper motive. And that's exactly what we're doing in Antigua. We are saying this statute was passed for corrupt ends. And that is a fact question. It requires — So you're not challenging the constitutional provision. You're challenging the statute as unconstitutional. Correct. Yeah. There's no constitutional provision here. Yeah. That's right. So, yes, it is plainly relevant to that fact question. So that's one point that was raised in my friend's presentation. Another point, Judge Miriam asked, what is the standard for reasonable contemplation? We think that Bonson's explains that you have to provide a nonspeculative basis to conclude that a particular event is going to happen. We think we've provided that nonspeculative basis. And if the Court were concerned that that just allows anyone to waltz into court and get this discovery, I think that's where the intel factors come in. The statutory prerequisites are intended to be screens. Intel tells us that most of this work is done in the discretionary phase of the case. That's for Judge Furman on remand. You're ducking the practical questions that this district court judge is facing. And the practical questions are, how is a judge to assess the propriety of you getting all kinds of personal information about all kinds of foreign government officials when he doesn't know what the proceeding is? Sure, Your Honor. So that's covered by the reasonable contemplation standard. I think that I agree that I have to show you that there's an objective basis to conclude two things in Antigua. Would you be prejudiced if he simply decided to, look, you can file whatever you want. I'm going to sit on it until I get information about whether there's an appeal and what the issues are. I do think we would be prejudiced. Why? Because, Your Honor, as I was explaining before, we need to start the American discovery process before the appeal kicks off, because the American discovery process takes quite a long time. And there is a serious risk that we don't get the discovery in time to raise it in the appeal. That's the prejudice. What about that component of something else that we said in connection with the reasonable contemplation requirement, that proceedings must be instituted for the expectation of likelihood? Actually, the proceedings will be instituted within a reasonable time. And here we have no sense of time. Yeah. So I think Intel. It's on the Antigua side, but maybe also on the UAE side. Yeah. So I think that Intel explains it doesn't need to be imminent. You just have to have some objective basis to think that it's going to be instituted in a reasonable time. Here we have a judgment that has been pending for a year. The trial court, and this is in the record, the trial court has explained that there is no reason for issuing this judgment. And so I think that it is reasonable to conclude that we're going to get the judgment in the next couple of months, we think. Based on what in the record are you relying? Yeah. So I think I'm relying on the fact that this has been going for a year. This is a very high-profile, contentious case. As my friend noted, there's been some motions practice that has delayed things in Antigua. But the court — What is the motions practice? The motions practice is about reopening the record to submit discovery that we have obtained, I think, from the Southern District Proceedings. Oh, you have obtained some discovery. Some, but not these financial records. That's discovery related to the broker in the Alfa Nero transaction. These are different records related to the individuals who allegedly — And so that's subject to motion practice? Yes. And what is the standard in Antigua in connection with determining whether that discovery will be admitted? I don't have that information, Your Honor. We can file a 28-J. It's not in this record. I will say that. We're outside the record now. But, you know, what I can tell you is that — my friend has also raised the point that even once we get on appeal, we'll have to file a motion for leave to submit this evidence. That still qualifies as for use, because if you use evidence to move for leave to submit evidence, you're still using it in the foreign proceeding. So that's not a problem for us. The big issue, Mr. Costello, and I think both of you have referred to it, is there seem to be a number of intervening steps. And we seem to have said that in connection with whether or not something is reasonably contemplated as a proceeding, we don't like intervening steps. We like a direct link. And I'm not sure that you've answered that for me, but I appreciate the argument. Well, let me see if I can. I'm going to give you 30 seconds to answer. Sure. So I agree that there are some intervening steps. I think there are two intervening steps. And what we have to do is give you an objective basis to conclude that the steps will occur. The steps are these. First, I have to convince you that the judgment will issue in such a way that the corruption issue will be relevant on appeal. Second, I need to convince you that one side or the other is going to appeal. And then we will have an appeal that we can raise this evidence in. I think there is an objective basis to conclude on this record that both those things will happen. We have – I know I'm moving over my time, but very quickly, it's just a highly contentious case between both sides. It's very likely that both sides are going to appeal. That's what we have. How will Judge Furman know what documents you're entitled to and what you're not? Of the personal information you're asking about foreign government or about foreign government, the voluminous personal information you were asking for about foreign government officials. Right, Your Honor. So I think if I win here, you will have concluded that there's an objective basis to think that the corruption issue will be relevant on appeal. Right. Right. And then – So how does he know whether you need documents from this minister or that minister going back 5 years, 10 years, or however many years? How is he to – how is he to vet that? How is he to handle that? I think he would vet it in exactly the way that U.S. courts apply Rule 26. He would look at what the issue is. We would submit. He wouldn't know because he doesn't know what's in play on the appeal. He'd just keep begging that question. Your Honor, again, I think that what he would know is that the corruption issue, our argument that this statute is unconstitutional because it was passed with a corrupt motive, that's up on the appeal. That would be assumed. Thank you very much. Thank you, Your Honor. We'll preserve the decision, I think, obviously.